INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v.
H. M. THOMPSON.

Decided December 18, 1903.

**1.—Railroads—Negligence—Fencing Right of Way—Charge.**

The railway company is required to exercise the utmost care for the safety of its passengers, and in view of the fact that it has the right to fence its right of way, if this is not done the fact that derailment is caused by contact with an animal is one which may be looked to in ascertaining whether or not the carrier has exercised due care. Special charge presenting the converse proposition was properly refused.

**2.—Same—Prima Facie Case—Practice.**

When, by the derailment of the train a passenger is injured, a prima facie case of negligence is made out which entitles him to recover unless it is rebutted. Special carges contravening this principle were properly refused.

Appeal from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

*Hicks & Hicks,* for appellant.

*H. C. Carter* and *Perry J. Lewis,* for appellee.

NEILL, ASSOCIATE JUSTICE.—Action for damages brought by appellees against appellant for personal injuries inflicted upon the former by the alleged negligence of the latter.

Appellee's petition charges that "on the 12th of August, 1901, while he was a passenger on one of appellant's trains, the train through defendant's negligence was wrecked and derailed, and in said wreck and derailment he was seriously, painfully and permanently injured."

The appellant answered by a general demurrer and a general denial.

The case was tried before a jury and resulted in a judgment for appellee in the sum of $10,000.

*Conclusions of Fact.*—The evidence is reasonably sufficient to establish as facts the allegations in appellee's petition quoted in our statement of the nature and result of the suit. In considering the assignments of error, evidence germane to them will be recited, and, when necessary, discussed.

*Conclusions of Law.*—Appellant's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth assignments of error complain of the court's admitting in evidence, over its objections, the testimony of certain witnesses which strongly tended to show that the fence of appellant's right of way about where the accident occurred was so defective and out of repair as not to prevent cattle coming through and going upon its railroad track.

Under these assignments the following proposition is asserted: "A railway company owes no duty to its passengers to fence its track or, in case its right of way has been fenced, to keep the fence in repair so

as to exclude cattle from the track, and its failure to do so is immaterial upon the question of appellant's negligence in the operation of its train."

There was testimony tending to show that the derailment and wreck of the train was caused by its engine coming in collision with a calf, which came on the right of way, through a defect, near by, of the company's fence.

The question, therefore, presented by the assignments of error is: Can it be said as a matter of law that a railway company owes its passengers no duty to either fence its right of way, nor if fenced, to exercise reasonable care and diligence to keep the fence in such repair as will prevent cattle from coming through and going upon its track? If an affirmative answer be given this question, the testimony complained of should not have been admitted. On the other hand, if it can not be said as a matter of law that a railroad company owes its passengers no such duty, it is a question to be determined by the jury, from the nature of the relation of a common carrier to its passengers and all the facts and circumstances, whether such duty rests upon it, and the testimony would be admissible upon such issue of fact.

While a common carrier is not an insurer of the safety of its passengers, it is its duty to provide for their safety as far as human care and foresight will go. Hutch. on Carr., sec. 501. Or, as held in numerous cases in this State, "common carriers are required to exercise the 'utmost care' for the safety of their passengers." Knauff v. Traction Co., 70 S. W. Rep., 1011, and cases cited. The duty to exercise this high degree of care, when applied to a railroad, extends to keeping its roadbed free from obstructions endangering its passengers. Fetter on Carr., sec. 30.

The liability imposed upon a railroad company which has not fenced in its road, by the Revised Statutes, article 4528, does not exclude other liabilities which may arise from its failure to fence it, or if fenced, to keep the fence in repair. In Quill v. Railway Co., 46 S. W. Rep., 847, 55 S. W. Rep., 1126, this court said: "While it may not be the duty of a railroad company to servants operating its trains to inclose its roadbed, yet if the company, after having fenced it, negligently permits its fence to become so out of repair that stock can enter upon the track, and if the danger to its employes incident to operating its trains is by such negligence increased, and if by reason of such increased risk one of the employes is injured by the derailment of an engine caused by its collision with stock entering upon the track on account of such defective fence, the company would be liable for the injury thus occasioned its employe." If this be correct, a fortiori would the railroad, upon such facts, be liable to an injury to a passenger. But in such cases the liability of the company does not rest alone upon the authority of the decisions of this court.

In Atchison, T. & S. F. Ry. Co. v. Reesman, 23 Law. Rep. Ann., 768, 60 Fed. Rep., 370, the plaintiff was a brakeman, and the burden of his

case was that the railway company had negligently suffered the fences along its right of way to become and remain out of repair, and in consequence thereof a steer broke through, got upon the track, derailed the train, causing the injury to plaintiff, it is said by Mr. Justice Brewer: "The purpose of fence laws of this character is not solely the protection of proprietors of adjoining fields. That there should be no obstructions on the track is a matter of the utmost importance to those who are called upon to ride on railroad trains. Whether that obstruction be a log placed by some wrongdoer, or an animal straying on the track, the danger to the trains, and those who are traveling thereon, is the same." And after reviewing many cases on the subject quotes with approval from Donnigan v. Erhardt, 119 N. Y., 468, the following: "A railroad company, for the safety of its passengers, as well as its employes upon its engines and cars, is bound to use suitable care and skill in furnishing not only adequate engines and cars, but also a safe and proper track and roadbed. The track must be properly laid and the roadbed properly constructed, and reasonable prudence and care must be exercised in keeping the track free from obstructions, animate and inanimate; and if, from want of proper care, such obstructions are permitted to be and come on the track, and a train is thereby derailed, and any person thereon injured, the railroad company, upon plain common law principles, must be held responsible. Experience shows that animals may stray upon a railroad track, and, if they do, there is danger that the train may come in collision with them and be wrecked. Adequte measures, reasonable in their nature, must be taken to guard against such danger. Independently of any statutory requirement a jury might find, upon the facts of a case, that it was the duty of a railroad company to fence its track and guard against such danger."

Where a passenger has been injured in a collision between his train and animals on the track, the failure to fence is sufficient evidence of negligence to take the case to the jury. Sullivan v. Railway Co., 30 Pa. St., 234; Lackawanna & B. Railway Co. v. Chenewith, 52 Pa. St., 382.

In Fordyce v. Jackson (Ark.), 20 S. W. Rep., 528, where plaintiff's testimony tended to show that the derailment of the train upon which he was riding was caused by a bull on the track, the court said: "It is no answer for the railway to prove simply that the animal came there without its knowledge. In this State it is the general custom to permit cattle to run at large. It is apparent to those who operate railroads that roaming cattle are a constant menace to the safety of an unguarded track. The railway's obligation to everyone whom it undertakes to carry in the relation of a passenger is that it will take every reasonable precaution to avert injury to his person, whether from collision with cattle or from other danger, which it has reason to apprehend. The omission of any reasonable caution to effect that end is negligence. The obligation required of the employes in charge of the trains faithful watchfulness, to prevent accidents by collisions with

cattle; and it requires the company to keep a clear right of way, to afford them the facility of performing this duty. If these and other precautions are insufficient to guard against the danger, and a fence will render the track safe from the intrusion of cattle, the company's obligation demands the more effective precaution."

Again, it is said by Chief Justice Stayton in Gulf, Colorado & Santa Fe Railway Co. v. Wilson, 79 Texas, 371: "In view of the fact that a railway company has the right to fence its right of way, if this is not done the fact that a derailment is caused by contact with an animal, is a fact which may be looked to in ascertaining whether or not the carrier has exercised due care."

It can not, therefore, in view of the authorities cited, be held as a matter of law that a common carrier by rail owes its passengers no duty to fence its track, or if fenced to keep the fence in such repair as will prevent cattle from entering thereon. This disposes of the question presented by the first twelve assignments of error adversely to appellant.

There was no error in the court's refusal to give at appellant's request the following special charge: "A railway company is not required, under the law of this State, to fence its track or provide cattle guards along its track, and in case it has fenced its track or provided cattle guards, it is not required to keep the same in repair, and even though you should find that the fence and cattle guards along defendant's right of way where the accident is alleged to have occurred were defective or in bad condition, such facts of themselves would not constitute negligence upon the part of defendant," as is demonstrated by what we have said in considering the preceding assignments.

It is clear that appellant was not prejudiced by the failure of the court to exclude the testimony complained of in the thirteenth assignment of error. For the undisputed testimony shows that when the calf was first seen by the engineer it was not more than forty feet in front of the engine; that it would have been impossible, under any circumstances or conditions, to stop the train in time to avert the collision; that the collision with the calf knocked the front trucks of the engine off the rails and they rode the ties for about 300 or 350 yards when the engine turned over. The derailment of the trucks of the engine rendered the conditions entirely different from such conditions as the whole of Mr. Green's testimony, whether drawn out by appellant or appellee, was predicated upon, and made the derailment of the train inevitable. What difference, then, could it have made in what distance a train, with all equipments in first-class condition, could have been stopped, whether running on a down, level or up grade? It could not, under any conditions, by the use of every means and effort, have been stopped before it struck the calf, and there is no testimony tending to show that its movement could have been controlled after the engine's trucks had been derailed by such collision.

The court did not err in refusing to give, at appellant's request, spe-

cial charge number 2, which is as follows: "In order for plaintiff to recover in this suit he must prove by a preponderance of the evidence not only that defendant, at the time plaintiff received his alleged injuries, if any, was negligent in the operation of its train, but that such negligence, if any, was the proximate cause of plaintiff's injuries, if any. And although you should find that defendant was negligent in the operation of its train, still if you believe from the evidence that such negligence, if any, was not the proximate cause of said injury, but that said accident would have happened even though said train had been carefully operated, you will find for the defendant." When a passenger is injured in the derailment of a train a prima facie case of negligence is made out which entitles him to recover unless it is rebutted. Mexican C. Railway Co. v. Lauricella, 87 Texas, 277; Gulf, C. & S. F. Railway Co. v. Smith, 74 Texas, 276; Elliott on Railroads, sec. 1634; Fetter on Carr., sec. 482; 3 Thomp. on Neg., secs. 2770-73. Galveston H. & S. A. Railway Co. v. Fales, recently decided by this court (1 Law Jour., 911), and authorities there cited. The same principle disposes of appellant's other assignments which complain of the court's failure to give other special charges which are antagonistic to it.

The twenty-third assignment of error raises a question of fact, and is without a statement to support it. Therefore it will not be considered. Rule 31; Galveston, H. & S. A. Railway Co. v. Puente, 70 S. W. Rep., 362.

There is no error requiring a reversal of the judgment, and it is affirmed.

Writ of error refused.