GALVESTON, H. & S. A. RY. CO. v. SALISBURY et al.[†]

(Court of Civil Appeals of Texas. San Antonio. Jan. 3, 1912. Rehearing Denied Jan. 31, 1912.)

1. MASTER AND SERVANT (§ 112[*])—INJURIES—NEGLIGENCE—DEFECTIVE FENCES.

Since the presence or absence of a fence along a railroad right of way affects the degree of care required of employés for their own protection in operating trains, the company owes a duty to its trainmen to maintain such fence,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

making it actionable negligence for it to fail to maintain a fence permitting stock to get on the track, resulting in a derailment, killing an engineer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 222; Dec. Dig. § 112.*]

2. MASTER AND SERVANT (§ 203*) — ASSUMPTION OF RISK.

The rule as to assuming the risk of dangers ordinarily incident to an employé's work refers to the work done, in view of the conditions surrounding it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543; Dec. Dig. § 203.*]

3. MASTER AND SERVANT (§ 293*)—INJURIES—NEGLIGENCE—INSTRUCTIONS.

In an action for a railroad engineer's death in a derailment, claimed to have been caused by failing to maintain a right of way fence, permitting cattle, which were struck, to get on the track, the court authorized the jury to find for plaintiff, though the track was fenced at the place of derailment, if the stock came through the fence upon the right of way, and it was defendant's duty to exercise ordinary care to maintain it reasonably stock proof, and the fence was insufficient to turn cattle where they entered, and it was negligent for defendant to permit the fence to be in that condition. Held, that the charge correctly submitted the question of negligence in permitting the fence to be out of repair.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 293.*]

4. APPEAL AND ERROR (§ 216*)—OBJECTION BELOW — INSTRUCTIONS — REQUESTS — NECESSITY.

If defendant desired that an instruction which correctly submitted a question of negligence should refer to the circumstances from which its duty arose, it should have requested it, and failing such request, cannot complain of the omission on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§ 627–641, 660–676.]

5. MASTER AND SERVANT (§ 288*)—INJURIES—ASSUMPTION OF RISK—QUESTION FOR JURY.

The fact that the right of way fence had been down for about 100 feet for a month or so, where the cattle, struck by decedent railroad engineer when his train was derailed, entered the right of way, would not make him assume the risk of injury, as a matter of law, from derailment by striking stock, if he had no knowledge of such condition of the fence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 288.*]

6. MASTER AND SERVANT (§ 288*)—INJURIES—JURY QUESTION—NEGLIGENCE.

Evidence, in an action for a railroad engineer's death in a derailment, caused by striking stock, held to make it a jury question whether the engineer knew or ought to have known that the right of way fence was out of repair, so as not to be stock proof.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 288.*]

7. MASTER AND SERVANT (§ 289*)—INJURIES—CONTRIBUTORY NEGLIGENCE — SUFFICIENCY OF EVIDENCE.

Evidence, in an action for a railroad engineer's death in a derailment, caused by striking cattle, held to make it a jury question whether decedent acted as an ordinarily prudent person in continuing with an ordinary lantern as headlight after the electric headlight had failed.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

8. MASTER AND SERVANT (§ 286*)—INJURIES—PROXIMATE CAUSE.

If a railroad engineer, killed in a derailment, caused by striking stock, did not know that the fence was down, permitting the stock to get on the track, any negligence in running at a high speed after the electric headlight failed could not have proximately contributed to the action, making it error to instruct that plaintiff could not recover in such case, where the evidence made it a jury question whether decedent knew that the fence was down.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

9. DEATH (§ 95*)—ACTION—MEASURE OF DAMAGES.

The widow and minor children are entitled to recover for the wrongful death of their husband and father such amount as will compensate them for the pecuniary loss, if any, which they sustained because of his death; the amount recovered being apportioned by the jury.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 108–115, 120; Dec. Dig. § 95.*]

10. DEATH (§ 99*)—DAMAGES—EXCESSIVE RECOVERY.

In an action for negligently causing the death of a railroad engineer, a recovery of $9,500 by the widow, and $7,000 and $9,500, respectively, by his two minor daughters held not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by Alice K. Salisbury and others against the Galveston, Houston & San Antonio Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, Howard Templeton, and W. F. Ezell, for appellant. Sam C. Lackey, Perry J. Lewis, and H. C. Carter, for appellees.

JAMES, C. J. The action is by Alice K. Salisbury, widow of Joseph F. Salisbury, suing for herself, and as guardian of Jean F. Salisbury, a minor, and by the First State Bank & Trust Company of Cuero, as guardian of Bertha E. Salisbury, a minor, to recover of appellant damages for the death of Joseph F. Salisbury, father of said minors, and husband of plaintiff Alice.

It was alleged that Salisbury was an engineer, operating one of defendant's engines on a passenger train between Houston and Cuero, which train was derailed and wrecked about a mile before reaching the station of Telfener, by an animal on the track, which occurrence caused his death. Two grounds of negligence of defendant were alleged: First, that the track was fenced, and defendant had negligently failed to maintain the fence in such condition as to turn stock, whereby the animal got upon the track; and, second, that the engine was equipped with an electric headlight, and defendant had negligently permitted the same to be in such defective condition that it would not burn,

thereby obscuring the view of the engineer and causing him to strike the animal.

Defendant pleaded demurrers and the general issue; that the animal was not upon the track through defendant's negligence or any defect in the fence; that the engine had a proper headlight; that the same failed several hours, and at a considerable distance from the place of the wreck, without any fault of defendant, said failure being due to some other cause, or some act or omission of Salisbury; that when it failed Salisbury put a lantern in the headlight house, and voluntarily proceeded on his run, knowing the risk and danger incident thereto and the probability of encountering stock on the track, at an excessive and dangerous speed, and upon these allegations defendant based defenses of contributory negligence and assumed risk. Defendant also had allegations to show that the accident was produced by conditions which could not reasonably have been foreseen or anticipated by it. There was a verdict of $9,500 for the widow, of $7,000 for the minor Bertha, and $9,500 for the minor Jean.

The first assignment of error complains of the overruling of a special demurrer to that part of the petition relating to the fencing of the right of way and the duty of defendant to maintain the fence, upon the objection that the same is insufficient to disclose any actionable negligence on the part of defendant. The second and third assignments embody substantially the same matter.

The part of the pleading to which these exceptions were directed reads as follows: "That the defendant had a fence, inclosing its right of way, near and in the vicinity of where the wreck occurred, and it was the duty of the defendant to maintain the said fence so as to prevent stock and animals from getting upon the right of way and track upon which its trains were run, and thereby endangering same, but, in violation of this duty, the defendant negligently permitted the said fence, near and in the vicinity of where the wreck occurred, and it was the duty of the defendant to maintain the said fence so as to prevent stock and animals from getting upon the right of way and track upon which its trains were run, and thereby endangering same, but, in violation of this duty, the defendant negligently permitted the said fence, near and in the vicinity of the wreck, to become out of repair and insufficient to keep stock from getting upon the said right of way and track, and, by reason of the negligent manner in which the said fence was maintained as aforesaid, an animal of some kind went in upon the defendant's said right of way and track, and the said train came into collision with the said animal, and was thereby wrecked and derailed, and the death of the said Joseph F. Salisbury thereby caused, and this negligence directly caused and contributed to the death of the said Joseph F. Salisbury." The above was, in substance, an allegation that defendant had constructed a fence, inclosing its right of way, and failed to maintain same in such manner as to prevent the entering of stock, which was alleged to be negligence, as an omission of duty, on the part of defendant in reference to this engineer.

[1] The propositions advanced embody the following contentions: That our statutes do not require railway companies to fence their tracks, and the statutes on the subject have in view the protection of inclosures, and therefore, because defendant had fenced its track, it owed its employés no duty in reference to maintaining the fence it had constructed; that to impose upon defendant the duty to its employés operating trains to maintain a fence it has constructed, so as to turn stock, it must appear that there existed facts and conditions sufficient to show that the danger to said employés, incident to operating trains, was increased by the failure to maintain the fence, and the allegations did not state facts and conditions sufficient to indicate the existence of such a duty. We think it is needless for us to discuss this question at any length. The views of this court are expressed in Quill v. Railway, 93 Tex. 616, 55 S. W. 1126, Railway v. Thompson, 34 Tex. Civ. App. 67, 77 S. W. 439, and we refer, also, to the opinion of the Supreme Court, in Railway v. Quill, 92 Tex. 335, 48 S. W. 168.

[2] A railway fencing its right of way creates changed conditions, which enter into and affect the work done by its employés who operate its trains, and enter into and affect the degree of care that such employés would ordinarily exercise in the performance of their work. When we speak of dangers ordinarily incident to the work, it has reference to the work done, in view of the premises and conditions with which the master surrounds the servant. And when we speak of ordinary care of the master or of the servant it has reference to such conditions; and those conditions are to be considered in either case, in determining their duties to each other. When the railway company has not fenced its track, those operating trains would be expected to do so, having due regard to that fact, which makes certain vigilance necessary that may, in the exercise of ordinary care, and naturally would, be omitted, where the master furnishes a track that is fenced. The track being fenced, the required degree of care on the part of an engineer to avoid animals on the track is different than where there is no fence; and the failure, where there is a fence, to maintain it, and thereby admitting animals to the right of way, creates a condition calculated to greatly increase the danger to the employé; and this gives rise to a duty on the part of the master to the employé to exercise ordinary care to conserve the conditions under which the latter is performing his work, and the failure to do so is actionable negligence.

The petition alleged that Salisbury was acting in the discharge of his duties, and in the exercise of all due care, when injured; that plaintiffs were unable to allege more specifically the facts constituting the acts of negligence, as the facts were not in their possession, and were particularly within the possession of defendant. We are of opinion that the petition sufficiently stated a prima facie case, founded on negligence of defendant, in regard to the maintenance of the fence, and we overrule assignments 1, 2, and 3.

The fourth and fifth assignments complain of the first paragraph of the charge, because there was no evidence showing or tending to show the existence of such facts, circumstances, and conditions as would create any duty on the part of defendant to maintain the fence, so as to exclude stock from the track.

[3, 4] We conclude, as a matter of fact, that the testimony disclosed such duty and warranted the giving of the charge. It requires no discussion to show that the failure to maintain a fence in a condition to exclude stock was of a nature to increase the danger to train operatives incident to the moving of trains in that locality. The charge complained of authorized a verdict for plaintiffs, if the jury believed from the evidence that defendant had its track fenced at and near the place of derailment, and that the animal came through the fence upon the right of way, and that it was the duty of defendant to exercise ordinary care to maintain the fence in a condition reasonably sufficient to prevent stock crossing upon the right of way, and that the fence where the animal crossed, if it did so, was out of repair, and insufficient to keep stock from getting over into the right of way, and that it was negligence on the part of defendant to permit the fence to be in that condition, and such negligence was the proximate cause of the derailment, and that Salisbury was not guilty of contributory negligence, and did not assume the risk. This was a correct and sufficient submission of that form of negligence. It was not faulty as a general submission of the issue, in that it omitted to call the jury's attention to the facts, circumstances, and conditions in evidence, from which defendant's duty would arise. An elaboration of the charge, in any respect, was a matter of request, if desired. The testimony was sufficient to show the duty of defendant to maintain the fence, and to show negligence in reference thereto. Consequently we overrule these assignments and, also, for the same reasons, the sixth and seventh.

[5] The eighth complains of the overruling of the motion for new trial. Under it, the appellant states that, according to plaintiffs' testimony, the right of way fence was completely down for the distance of about a hundred feet, and had been in such condition for a month or so, and thus the right of way was in fact unfenced, and Salisbury assumed the risk of cattle being upon the track at that point. As such condition of the fences does not establish an unfenced track, and as neither the eighth assignment nor the proposition under it refers to any knowledge by Salisbury of that condition of the fence, we notice it no further.

[6] The ninth complains of the overruling of a motion for new trial, in that, under the undisputed evidence, Salisbury must be held, as a matter of law, to have assumed the risk, and that defendant owed him no duty to maintain its right of way, so as to turn stock, it appearing from the uncontroverted evidence that stock sometimes got into the right of way in the vicinity of this occurrence, where the road runs through a level open country, and the right of way was free from brush, trees, or other obstructions, and that an engineer would necessarily know of the condition of the fence, and that cattle sometimes came upon and were to be encountered on the track, and that Salisbury had been working on that division of the road as brakeman, fireman, and engineer for about 20 years, and had passed over the place of the accident almost daily during that time, and must have been aware of the condition of the right of way fence and the danger of encountering animals on the track, and hence assumed the risk thereof.

This assignment proceeds upon the theory that the undisputed testimony showed that Salisbury must necessarily have seen and known that the right of way fence was in such condition that it would not and did not exclude stock. We find that the evidence was not undisputed, as appellant claims.

There was evidence before the jury showing that at the place where there were signs of the animal having gotten upon the right of way, and to which place the evidence was chiefly directed, the fence was not completely down, and had not been, and was apparently in proper condition. (Testimony of Cline.) Foley, the section foreman, testified that five or six days before the accident he had repaired the fence at this place, and that he left it in good repair; that the fences were under his jurisdiction for 10 miles, and he repaired the fences; it being his duty to do so. Whenever he went over the section, he always stopped and repaired the fences when they were out of repair, and that he always looked out for the fence when he went along in the hand car. He also testified that he occasionally saw stock on the right of way in that vicinity, because people came through the gates and left them open. It is incomprehensible, if the condition and maintenance of the fence were as this witness states, that it should be said by us, as a matter of law, that those engaged in operating trains must have observed and known of the fence being insufficient to guard against the

entrance of stock. The five wire fences were there. The section foreman testified that they were regularly kept in repair; that the particular fence had just been repaired. Cline testified that before the wreck they appeared all right to him. Under this testimony, we cannot declare that Salisbury saw and knew that they admitted of stock getting upon the track from the adjoining pastures.

From the fact that cattle, which entered through gates left open, were occasionally seen on the right of way in this vicinity, it would not follow that Salisbury assumed the risk of encountering cattle there which came upon the right of way through defendant's negligence in maintaining the fences. Salisbury had the right to act upon the assumption that the fences were sufficient and sufficiently kept up, for the purposes intended, and that cattle would not be there by reason of insufficient fences. Although Foley testified he had seen cattle on the right of way, it would, at best, be only a strained inference of fact that Salisbury had seen cattle there. That he had seen animals there was not otherwise shown.

This case is governed, as to assumed risk, by the recent statute on the subject, and the case is plainly one where the particular risk or danger was not so plainly obvious as to exclude the idea that a reasonably prudent man would not have proceeded with the operation of the train just as this engineer did on this occasion; and therefore it was a question of fact, under said statute, whether or not he so acted. For this last-named reason, the court properly refused to give the charge referred to in appellant's tenth assignment.

The eleventh assignment is that the court erred in the first paragraph of the charge in authorizing the jury to find for plaintiffs, without instructing them that the danger incident to the operation of the trains must have been increased by defendant's negligence in permitting the fences to be in a condition that did not exclude stock. The facts upon which the court made it necessary for the jury to find for plaintiffs, involved an increase of risk, and it was unnecessary, and it might have been misleading, for the court to have required the additional finding of increased risk. This disposes, also, of the twelfth assignment. The foregoing discussions relate wholly to the matter of defendant's negligence in keeping up the fences.

[7] The thirteenth complains of the refusal of a new trial, upon the ground that it appeared from the uncontradicted evidence that after the failure of Salisbury's headlight, "for which defendant was in no wise responsible, he voluntarily ran his engine at a dangerously rapid speed where he was liable to encounter stock upon the track, and that his voluntarily operating a blind engine in the manner he did, under the existing conditions and surrounding circumstances, increased the risk and danger of his striking some animal on the track, and that he was liable to encounter stock on the track, and must have known that he was liable to do so."

Appellant's proposition is: "If Salisbury, after the headlight failed, voluntarily so operated his engine as to increase the risk of striking an animal on the track, then the plaintiffs are not entitled to recover; and, the evidence showing conclusively that such was the case, the court erred in overruling the defendant's motion for new trial, based on that ground."

It appears that about the station of El Campo, an hour or so before reaching the place of the accident, Salisbury's headlight, through some defect, gave out, that he tried to fix it, and finally placed a hand lantern in the headlight house, and proceeded with his run. This is what appellant calls a "blind" engine. While the light furnished by the lantern was not as effective as that of the standard electric headlight that it replaced, it, to some extent, answered the purpose of a headlight. The conductor testified that it was not quite as much as the old-style headlight. There was testimony that at the time of the accident, just before reaching Telfener, the train was not running at a dangerous speed; some testimony showing that the train had slowed down, and was running 15 miles an hour.

This assignment amounts to this: That because Salisbury went forward with a diminished headlight, of his own volition, running, as he did, over a place where he knew cattle were liable to be, that he increased the risk of his being injured by an accident from encountering animals, and therefore plaintiffs cannot recover, and, said facts and conditions appearing from the undisputed evidence, a new trial should have been ordered.

We have sufficiently discussed the matter of his knowledge that cattle were liable to be met upon the right of way. Also the fact that he had a right to assume and act upon the assumption that the track, being fenced, was safely fenced for the very purpose of excluding stock. These matters could, under the evidence, have been resolved in his favor. His duty required him to run the train—a passenger train—on certain time; and there was a freight train in his rear. The speed he employed, after substituting the headlight, was shown by evidence in the case to have been that which was usual and not negligent. It must be admitted, however, that it was more dangerous to run with the lantern than with the electric headlight, with reference to colliding with objects that might be upon the track. He did not, however, attempt to make his run without any headlight. That which was given him had failed, and in the emergency he substituted one which, to some extent, answered the purposes of a headlight, and evidently the best he could do under the circumstances.

The question raised is not one of law. He had reason to rely upon defendant having performed its duty towards furnishing him a safe track and upon the assumption that no animals would be upon the right of way through defendant's negligence, or that defendant had not, by its acts or omissions, increased the danger from that source. Had it not been for the insufficient fence, this animal would not have been on the track, and Salisbury would have made the run safely, notwithstanding the diminished light. The question, under our statute, relating to assumed risk was one of fact, and was whether or not, running the train as he did in the performance of his duties, and under the circumstances, he proceeded as an ordinarily prudent person would have done under the same circumstances. The assignment is overruled.

[8] The fourteenth is that the court erred in refusing this charge: "If Engineer Salisbury, after the headlight failed, operated his engine at such a rate of speed as to increase the risk of striking an animal that might be on the track, and his doing so could not have been reasonably foreseen and anticipated, and the accident was caused by such increase of risk, then the plaintiffs are not entitled to recover, and you should return a verdict for defendant." The master was not discharged of liability for the injury sustained as the proximate result of its negligence in maintaining the fence, although the engineer who was killed may have been running at a speed greater than a prudent person aware of the danger created by said negligence would have done, if this engineer did not know of said negligence of the master, which, after all, was what introduced the element of danger into the transaction. There appears to have been no insecurity necessarily involved in the speed of the train, or the condition of the light, but for the danger introduced by the condition of the fencing; and, unless the jury believed from the evidence that the engineer had, or might have had, knowledge of this element of danger created by the defendant, they would have been warranted in finding that the manner in which he was operating his engine was not negligence, under the circumstances and the requested charge would have taken this question from them. The above remarks require us to overrule the assignments from 15 to 18, inclusive. The above requested charge and another presented by the sixteenth assignment would, if given, have practically been peremptory charges for the defendant.

[9] The nineteenth complains of the charge on the measure of damages, which was as follows: "If you find for plaintiffs and allow them damages, you should award them such an amount as you believe, from the evidence, will compensate them for the pecuniary loss, if any, which you believe, from the evidence, they have sustained by reason of the death of Joseph F. Salisbury; and in the event you should so find you should apportion such amount and say in your verdict what amount you allow the plaintiff Alice K. Salisbury, and what sum Bertha Elizabeth Salisbury, and what sum the plaintiff Jean F. Salisbury." This charge was a correct statement of the rule for arriving at the damages. Railway v. Davis, 27 Tex. Civ. App. 279, 65 S. W. 217; Railway v. Heard, 91 S. W. 371. There were no requests to have the charge more specific.

[10] We overrule the remaining assignments, which complain of excessive amount of the verdict.

Affirmed.