SULLIVAN v. MASTERSON et al.   (No. 31.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 8, 1918. Rehearing Denied Feb. 20, 1918.)

1. APPEAL AND ERROR ⟨key⟩743(1) — SCOPE OF REVIEW—SUFFICIENCY OF ASSIGNMENTS.

Assignments of error will not be considered, when not in substantial compliance with rule 25 (142 S. W. xii), requiring reference to the part of the motion of new trial wherein the error assigned is complained of.

2. APPEAL AND ERROR ⟨key⟩722(1) — SCOPE OF REVIEW—SUFFICIENCY OF ASSIGNMENTS.

Assignments of error, failing to show that they are predicated on any bill of exceptions, or that any exception was taken to the ruling complained of, will not be considered.

3. APPEAL AND ERROR ⟨key⟩742(5)—SCOPE OF REVIEW—SUFFICIENCY OF ASSIGNMENTS.

An assignment of error that the court erred in instructing, as to the control of calls, that generally natural objects are the highest, artificial objects next, and course and distance the lowest grade, is not in itself a proposition of law.

4. APPEAL AND ERROR ⟨key⟩263(3) — SCOPE — PRESERVATION OF EXCEPTIONS — INSTRUCTIONS.

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1970, 1971 and 1973, as to presentation of instructions to opposing counsel, exceptions to a refusal to give special charges, failing to show that they were submitted to opposing counsel, will not be considered.

5. APPEAL AND ERROR ⟨key⟩730(1) — ASSIGNMENTS OF ERROR—SUFFICIENCY.

Assignments of error that the court erred in overruling an exception, as shown in defendant's exception to the charge as a whole, giving the transcript page, is too general and vague to be considered.

6. TRIAL ⟨key⟩133(6)—ARGUMENT OF COUNSEL—CURE OF ERRORS.

Conceding plaintiff's argument to have been beyond proper bounds, the error was cured by prompt instruction not to consider such remarks, and by the withdrawal of such remarks.

7. EVIDENCE ⟨key⟩383(12)—ADMISSIBILITY—ENTIRE INSTRUMENT.

The rule that, where a part of an instrument is offered in evidence, it should all be admitted, has its limitations.

8. APPEAL AND ERROR ⟨key⟩1056(2)—HARMLESS ERROR.

Error, if any, in excluding from the evidence an order of dismissal in another case, after the adverse parties had introduced a certified copy of the decree therein, was harmless; the evidence being irrelevant and immaterial, conceding that it was a part of the instrument which had been offered.

9. TRIAL ⟨key⟩140(1)—QUESTIONS FOR JURY—CREDIBILITY OF WITNESS.

The jury are the exclusive judges of the credibility and weight of the testimony.

10. BOUNDARIES ⟨key⟩37(1)—EVIDENCE—SUFFICIENCY.

Evidence held to sustain verdict fixing the location of plaintiff's boundaries as contended for by them in their action of trespass to try title.

11. BOUNDARIES ⟨key⟩3(3)—CONTROLLING ELEMENTS.

In determining boundaries, recourse should be had, first, to natural objects; second, to artificial objects; and, third, to courses and distances.

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Trespass to try title by H. Masterson and another against D. Sullivan and others. From the judgment rendered, Sullivan appeals. Affirmed.

J. F. Dabney, of Liberty, and Crook, Lord, Lowhon & Ney, of Beaumont, for appellant. C. F. Stevens and E. B. Pickett, Jr., both of Liberty, and H. Masterson, for appellees.

KING, J. H. Masterson and Bettie Bryan brought suit in the form of trespass to try title to the south 4,000 acres of the Margarita Buye league of land in Liberty county, Tex., naming D. Sullivan and others as defendants. Pending trial, settlement was effected between the plaintiffs and a number of the defendants. D. Sullivan, appellant, purchased the interests of the other defendants not included in the settlement; and prosecutes this appeal.

In the trial court, by agreement of the parties, the issue resolved itself solely into a question of boundary between the Margarita Buye league, claimed by appellees, and the Robert Burrell league, claimed by D. Sullivan. The Buye league being the senior, the only issue of fact in the case became the true location of the Margarita Buye league. Appellees claimed that the southeast corner of the Buye is approximately 5,000 varas west of an iron bolt, called by their witnesses the "accepted" northwest corner of the John Blair league, based on the calls of the field notes of one of the Nicholas De Nava surveys, which calls to begin at the northwest corner of the John Blair league, and lying immediately west thereof, and to be 5,000 varas square. The northwest corner of this Le Nava survey calls for a pin oak six inches N. 72° W. 33.8. The Buye field notes call for an eight-inch white oak at its southeast corner bearing N. 72° W. 33.8 varas. There were a number of the De Nava surveys, supposed to consist of 11; but they were abandoned many years ago because of an inhibition in the Mexican laws against locating so many leagues within 10 littoral leagues of the sea without the consent of the supreme executive. · The De Nava surveys were void on account of this inherent defect in the source of title to the same; it not being shown that the consent of the supreme executive had been obtained. They were, however, actually surveyed on the ground, and were not void on account of the manner in which they were surveyed.

Appellant, in addition to requiring appellees to show the location of the Buye, so as to include the land owned by him, offered evidence which he claims shows the location of the Buye to be 1,900 varas west of the location claimed by appellees. This location was based upon the location of the Wm. B. Reed league. He claims that the northeast corner of the Wm. B. Reed is the southwest corner of another De Nava survey, and that the northwest corner of this De Nava survey

is the southwest corner of the Buye. The case was tried by a jury, the court submitting the law to them in a general charge. The verdict was for appellees, motion for new trial was overruled in the trial court, and this appeal perfected by D. Sullivan.

The description in plaintiff's original petition of the land sued for is as follows:

"All that certain part of a league of land originally granted to Margarita Buye and located in said county about sixteen miles east of the town of Liberty, and beginning at the southeast corner of said league, thence north with the east line of said league 4,536 varas to corner, thence west parallel with the north and south lines of said league a distance of 5,000 varas to the west boundary line thereof, thence south in said west boundary line to the southwest corner of the league, thence east in the south boundary line of said league to the place of beginning, containing 4,000 acres of land."

The field notes of the Margarita Buye, according to the original surveyor, I. W. Burton, are as follows:

"The land surveyed to citizen Margarita Buye is situated on the creek called Pine Island Bayou and about two miles west of Wolf's Point, where a mound of earth was formed around a stake for the first landmark of this survey, from which a white oak 8 inches in diameter bears north 72 deg. west 33.8 varas distant; thence north 5,000 varas, measured, and a mound of earth was around a stake for the second landmark, from which a pine 24 inches in diameter bears north 68½ deg. west 11.2 varas distant, and another pine 36 inches in diameter bears north 30¾ deg. 211 varas distant; thence west 5,000 varas were measured, and. a mound of earth was formed around a stake for the third landmark; thence south 5,000 varas were measured and the fourth landmark was formed, from which a red oak 24 in. in diameter bears S. no deg. ·2′ east 42.6 varas distant, and a pine 30 inches in diameter bears south 42 varas distant; thence east 5,000 varas were measured to the first landmark, thus completing the survey of a league of land. * * *"

For a proper consideration of this case, we deem it necessary to give the description of the John Blair league, the De Nava survey No. 1, lying immediately north of the John Blair, the De Nava No. 6, lying west of the John Blair, and the De Nava No. 7, lying west of the De Nava No. 6. The field notes of the Blair, as translated into English, are as follows:

"In the prairie about 20 miles west of Santa Anna, at a place known as Wolf Point on the road to Trinity, set post in mound in the open prairie, lands high and rolling and rich; thence south 455.6 to a black jack in a small cluster of timber 9 inches in diameter, a line tree, 500 to a post in the open prairie in mound, lands low and wet; thence west 5,000 varas, set post and mound on the open prairie, lands rich, high, and rolling; thence north 500, set post in mound on the open prairie, lands low; thence east 5,018 to the place of beginning, containing one sito of land, four labors of which is fit for cultivation, balance pastural lands. This survey is on prairie with some scattering timber."

David Brown made this survey in 1834. The De Nava No. 1, surveyed by Isaac W. Burton in 1835, is described in the original field notes as follows:

"The league of land which by the foregoing order I have surveyed for citizen Nicholas De Nava is situated in Zavalla's Colony, on the

south margin of Pine Island creek at the northwest corner of a survey made by Blair, and this survey included the point called Wolf's Point, where the first landmark formed of a mound of earth around a stake was raised in prairie; thence east, following said Blair's north boundary line, 5,000 varas were measured to said Blair's northeast corner, it being the second landmark of this survey and having no witness trees; thence west 5,000 varas were measured, and the fourth landmark was formed like the preceding one, from which a Spanish oak 15 in. diameter bears north 27 deg. east 15 varas distant, and another tree of same kind and size bears north 36 deg. east 14.6 varas distant; thence south 2 min. west 4,980 varas were measured to the first landmark, thus completing the survey of a league of land, which you ordered me to survey. Four labors of said land belong to the class of arable land, and the remaining ones, being 21, to that of pasture land. * * *"

The De Nava No. 6 is described as follows:

"Situated in Zavalla's Colony, on the south margin of Pine Island creek, near a point called in English Wolf Point, and begins at the northwest corner of the Blair survey, where the first landmark was formed of a mound of earth around a stake with no witness trees, thence west 5,000 varas were measured and the second landmark was formed, from which a pin oak 6 in. in diameter bears north 72° west 33.8 varas; thence south 5,000 varas were measured and the third landmark was formed, from which a black jack 20 inches in diameter bears north 15 deg. west 28 varas distant; thence east 5,000 varas were measured, and the fourth landmark was formed having no witness trees; thence north along said Blair's west boundary line 5,002 varas were measured to the place where this survey was begun. * * *"

The De Nava No. 7 is described as follows:

"Situated in Zavalla's Colony on the south margin of Pine Island creek, near a point called in English Woyt Point, and begins at the northeast corner of a survey where the first landmark was formed by raising a mound of earth around a stake, from which a pin oak 6 inches 8 minutes in diameter bears north 2° west 38.8 varas distant; thence west 5,000 varas were measured and the second landmark was formed, from which a red oak 24 inches in diameter bears south 2 min. east 42.6 varas distant, and a pine 36 inches in diameter bears south 42 varas distant; thence south 5,000 varas were measured and a third landmark was formed, from which a black jack 7 inches in diameter bears south 88 deg. east 6 distant and another tree of the same kind 6 inches in diameter bears south 87 deg. east 6.5 varas distant; thence east 5,000 varas were measured to the southwest corner of a survey where the fourth and last landmark was formed from which a black jack 20 inches in diameter bears north 15 deg. west 28 varas distant; thence north along the west boundary line of a survey 5,000 varas were measured to the first landmark, thus completing the survey. * * *"

[1] Appellees object to the court's consideration of appellant's second, third, fourth, fifth, sixth, and eleventh assignments of error, and move the court to disregard said assignments, because they do not refer to the part of the motion for new trial wherein the error assigned is complained of, as required by rule 25, and object to the consideration of the second assignment of error, because neither the assignment nor the statement thereunder shows that the assignment is predicated upon any bill of exception.

We sustain this objection to assignments Nos. 2, 3, 4, 5, 6, and 11, and we will not consider same, because they are not in substantial compliance with rule 25 for the Courts of Civil Appeals, as promulgated by our Supreme Court (142 S. W. xii), in that there is no reference to the motion for new trial in which the error was complained of in the court below; and assignments Nos. 2, 4, 5, and 6 for the further reason that said assignments, nor the statements thereunder, show that the assignments are predicated upon any bills of exception.

[2] Assignments of error Nos. 4 and 11 refer to the page of the transcript for bills of exception, and while this court is not required to search the record for bills of exception not brought forward in the statement, we might not refuse to consider these assignments solely upon this objection. But assignments of error Nos. 2 and 6 do not show that there was any exception taken to the matters complained of. In the statement under assignment No. 6, the page of the transcript where the charge complained of is given is referred to, but the author of the brief simply says in the statement that it was excepted to, and because it was upon the weight of the evidence. There is no proposition under the sixth assignment of error, but it is submitted as a proposition of law.

[3] Appellees also level an objection against the consideration of this assignment for the further reason that it is not in itself a proposition of law. We think that this objection is good; the assignment being as follows:

"The court erred in instructing the jury as follows: 'You are instructed that if the testimony fails to satisfy your minds as to the whereabouts of the true locality of the Margarita Buye league of land by lines actually run, or by established corners appearing upon the ground, or enough of them to reasonably identify the land, then you will see if you can locate the same by reference to other calls in its field notes, being governed by the rules hereinbefore given you in this charge; that is, that generally natural objects are the highest, artificial objects next, and course and distance the lowest grade. Yet if, upon looking to the calls in the grant, and applying them to the lands in dispute, and considering all the surrounding and connecting circumstances, you are satisfied that the calls for course and distance from established corners show more satisfactorily where the true lines of the Margarita Buye league are, then you must establish said lines according to course and distance'—and in overruling defendant's exceptions thereto, as shown in the fourth paragraph of the defendant's exceptions to the charge."

Neither the fifth assignment of error nor the statement thereunder shows what action the court took with reference to the objection raised, and no reference is made to a bill of exception, nor does the statement under the third assignment of error disclose the grounds of objection.

[4] Appellees object to the consideration of appellant's ninth and tenth assignments of

error, because they complain of the court's refusal to give special charges claimed to have been asked by appellant, and urge that the exception to the refusal of the court, and which is attached to the special charge, are defective, in that they fail to show that any of said special charges were submitted to opposing counsel for examination and objection at any time after the charge was given to the parties or their attorneys for examination, and further because, if the said assignments are submitted as a proposition, appellees urge that neither constitute a proposition of law.

The objection must be sustained, under articles 1970, 1971, and 1973, Vernon's Sayles' Civ. Stat. 1914. Floegge v. Meyer, 172 S. W. 194; I. & G. N. R. Co. v. Jones, 175 S. W. 490; Ry. Co. v. Bell, 62 Tex. Civ. App. 117, 130 S. W. 634; Hayward Lbr. Co. v. Cox, 104 S. W. 403; Boone v. Herald Newspaper Co., 27 Tex. Civ. App. 546, 66 S. W. 313. The purpose of the statute in requiring that special charges requested should be presented for the inspection of the opposing side was the preventing of errors. If the special charges complained of had been presented to the opposing side, they would have had an opportunity to have objected to or approved them. The record does not show that this was done, and we are compelled, under the statute, to hold the assignments insufficient.

[5] The seventh assignment of error, being as follows:

"The court erred in overruling defendant's exception No. 5 as shown in defendant's exception to the charge as a whole. Tr. p. 34, XVIII,"

—is objected to by appellees on the grounds that there is no error assigned, and that it is too general and vague to be considered. This assignment is entirely too general for consideration by this court.

[6] The eighth assignment of error complains of certain remarks made by the plaintiff, H. Masterson, while arguing his case before the jury. No authority is cited to sustain the assignment, and, if it be conceded that the argument was without proper bounds, it appears that the trial court promptly instructed the jury not to consider the remarks of plaintiff so made, and that he at once withdrew the remarks. Ordinarily, this is regarded as sufficient correction of the error, and under the facts in this case we so regard it.

The twelfth assignment of error complains of the action of the trial court in sustaining the objections of appellees to the order of dismissal as to the defendants D. Sullivan et al. in the case of H. Masterson v. Sylvester Oppice et al., No. 3682, in the district court of Liberty county, of date August 15, 1911; appellant insisting that, inasmuch as the appellees had introduced in evidence a certified copy of a decree in said cause, they were entitled to offer said order of dismissal.

[7, 8] We think the testimony was irrelevant and immaterial, and could not affect the question of title or the question of boundary in the case. The proposition under the assignment is:

"Where a part of an instrument is offered in evidence, it should all be admitted."

This rule has its limitations (Robertson v. Russell, 51 Tex. Civ. App. 257, 111 S. W. 209), and, besides, the document offered by appellant was a separate and different order made in the same case but on a different date. However, if the same, under any construction, is error, it must be classed as entirely harmless, and affords no reason for the reversal of the case.

[9] This leaves assignment of error No. 1 only for consideration, which raises the question of the sufficiency of the evidence to sustain the verdict. All parties admitted and agreed that appellees have and hold title to that part of the Margarita Buye league of land sued for, wherever located, and that the issue was simply and solely a boundary question; the only issue of fact being the true location of the Buye league, and such issue took the form, of both sides presenting evidence to show the location of the league in question.

We are of opinion that there is testimony in the record to sustain the finding of the jury in favor of appellees' contention, and, that being true, we feel impelled to accord with the settled rule and not disturb the verdict. The jury had all the facts before them, looked at the witnesses, heard their testimony, and observed their demeanor. They were in a better position to judge of the weight and degree of credit to be attached to their statements than we are by a mere inspection of the record. The jury are the exclusive judges of the credibility and weight of the testimony. We cannot say that the verdict in this case is clearly wrong, and we understand that, before we are justified in setting aside a verdict of a jury upon the insufficiency of the evidence, it is not sufficient that it does not appear clearly to be right, but that it must appear to be clearly wrong.

[10] Witnesses for appellant and appellees agree as to the accepted location of the northwest corner of the John Blair at a point marked by an iron bolt near Wolf's Point. The Nicholas De Nava survey No. 1 calls for the northwest corner of the Blair as its southwest corner. It will be seen that the De Nava No. 6 calls for a six-inch pin oak for its northwest corner, and the Buye calls for an eight-inch white oak for its southeast corner, each, however, having the identical bearings, and there is testimony in the record that surveyors would frequently mistake a pin oak for a white oak. Now, the De Nava No. 7 calls to begin at a pin oak 6 inches in diameter bearing N. 2" E. 38.8 varas, running west 5,000 varas it calls for a red oak 24 inches bearing south 2 deg. east 42.6 varas, and a pine 36 inches bears south 42 varas,

this being the northwest corner of the De Nava No. 7. The southwest corner of the Buye also calls for a red oak 24 inches bearing south 2° east 42.6 varas, and a pine 30 inches bears S. 42 varas, the only difference in these two calls being that one of the bearing trees is stated as a pine 30 inches, while the other calls for a pine 36 inches, each bearing south 42 varas.

While these De Nava surveys are not recognized as legal, the surveys were actually made, and become important as connections from which other surveys could be located, based upon them. The trees and their bearings, called for as the northwest corner of the De Nava survey No. 6 and the southeast corner of the Buye, and those called for in the northwest corner of the De Nava No. 7 and the southwest corner of the Buye, being so nearly identical, we think the jury was justified, taking into consideration other facts in evidence, some of which we will discuss, to conclude that they were the same and identical trees as found by the original surveyor when he surveyed these various leagues.

The Buye, according to the original surveys, calls to begin about 2 miles west of Wolf's point. This is its southeast corner. By beginning at the accepted northwest corner of the Blair and running 5,000 varas west, we go 1,200 varas further west than "about two miles," and we find at this point, by recourse to the field notes of the De Nava No. 6, trees almost identical with those called for as the southeast corner of the Buye, and by beginning at this point and running 5,000 varas further west for the Nicholas De Nava No. 7 north line, we find trees called for in the field notes as the northwest corner of this De Nava almost identical with trees called for as the southwest corner of the Buye.

But, should you locate the Buye in accordance with the contention of appellant, by beginning at the northeast corner of the Wm. B. Reed survey, which calls to be about five miles west of Wolf Point, which is 9,500 varas, you would have the Reed located 11,900 varas west of Wolf's Point, or 2,500 varas further west than the field notes call for. The Wm. B. Reed survey was not placed upon the official map of Liberty county until after 1882, as shown by the official map of Liberty county in use in the General Land Office from 1862 to 1882, and also the testimony of Land Commissioner J. J. Terrell. The testimony of the land commissioner further shows that the relative positions of the Wm. B. Reed and the Margarita Buye surveys upon the map of 1841 were the same as they appear upon the official map now in use, and which recognized the Buye survey to have the same position as was found by the jury.

The testimony of R. C. Eubank, a surveyor, was to the effect that some sixteen or seventeen years before the trial, he found the marked southeast corner of the Margarita Buye league. He also testified that the location of the John Blair league had never been questioned. Surveyor Eubank further testified that when he made a survey of the Buye, some seven or eight years ago, he found a tree which he took to be the original corner tree of the Buye. He was not sure about this tree, but based his conclusion upon the appearance of the tree and his experience of 20 or 30 years in surveying land in the particular locality of the Buye league; that he relied upon the appearance of the age of the tree, but did not block the same out. He further testified that he found, several years prior to the trial of this case, a white oak which he took to be the southeast corner of the Buye; that it had a mark on it that was not the way corners are now generally made, but that they could be made both ways; that this tree was marked ✝ instead of X; that one of the prongs of this mark was a little longer than the other and one of them nearer up and down the tree than the other, but that the common way of marking a corner tree was X, with a hack above and below, or with two hacks above and below; that there was no ironclad custom about that; that every surveyor had a peculiar way of marking. which is merely characteristic of the surveyor.

It is shown by the testimony that most of the timber now standing in this vicinity is not over 30 or 40 years old, most of the older trees having yielded to the ax and have long since been manufactured into timbers and lumber, which accounts for the scarcity of any line or corner trees. Surveyor Compton, who testified for appellants, as shown by his map, locates Wolf's Point approximately at the northwest corner of the Blair, as testified by Surveyor Eubank, and the effect of his testimony recognizes the Blair as being located upon the ground at the same point where the official map now places the same, and where Surveyor Eubank places the same.

We do not deem it incumbent upon us to discuss the testimony of appellees, mainly that the description as to the character of land in some of these leagues and their drainage as described by the original surveyors do not correspond to the land as located according to the contention of appellees and the verdict of the jury. There is no conflict, as we recall, as to the calls in the description of these various surveys as contained in the original field notes. Inasmuch as this is a boundary question, and as every boundary suit must stand upon its own facts, a further discussion of the evidence would not be of importance to the profession. We think that the evidence was sufficient for the jury to conclude that the northwest corner of the Blair was at a certain iron bolt and that by locating the De Nava No. 6 by running west 5,000 varas, that the corner trees

called for as the northwest corner of this De Nava are the same and identical trees called for as the southeast corner of the Buye, and thereby ties the Blair and Buye with the De Nava No. 6 as a connection, and that the trees called for as the northwest corner of the De Nava No. 7 are the identical trees called for as the southwest 'corner of the Buye, and that, based upon these corners, the Buye is located as decided by the jury, with its southeast corner at a fish plate, which was placed several years ago by a man by the name of Jones, 5,000 varas west of the northwest corner of the Blair, and that by resorting to course and distance the Buye can be located with reasonable certainty by the calls for course and distance.

[11] The court properly charged the jury as to the controlling calls and their relative dignity—first, recourse to natural objects; second, artificial objects; and, third, to course and distance. It is the established law in Texas that the true and correct' location of land is ascertained by the application of all or any of these rules to the particular case, and, while course and distance are the most unreliable calls, still, in the absence of other more reliable, resort will be made to course and distance for the location of land.

The judgment of the lower court is affirmed.