PAYNE v. SHEPLER. (No. 821.)*

(Court of Civil Appeals of Texas. Beaumont. June 3, 1922. Rehearing Denied June 21, 1922.)

1. **Master and servant** ⬅️276(6) — **Evidence held to show defective condition of track caused wreck.**

In an action for the death of a locomotive fireman, on a train wrecked at a switch, evidence *held* to warrant verdict that defective condition of the track guard rail, together with rate of speed, was the proximate cause of the wreck.

2. **Trial** ⬅️129—**Alleged misconduct of counsel in argument held not prejudicial.**

In an action against the Director General of Railroads for wrongful death of a locomotive fireman, where in argument defendant's counsel explained who the Director was, and stated that any judgment rendered would be

paid out of government revenue, an interruption, by plaintiff's counsel, who stated that it was a well-known fact that the government would be reimbursed for any moneys paid out in such cases, was not prejudicial error, where statement of defendant's counsel was outside the record.

**3. Trial ⊜ 133(6) — Argument of counsel, though improper and unbecoming, held not grounds for reversal.**

In an action against the Director General of Railroads for death of a locomotive fireman, argument of plaintiff's counsel to the effect that defendant had called numerous witnesses, but only placed on the stand those belonging to the railroad official family, and failed to call witnesses whose testimony might have been favorable to plaintiff, while highly improper and unbecoming, *held* not reversible error, where court promptly sustained objections and instructed the jury to disregard it, especially where liability of defendant was established by satisfactory evidence.

**4. Death ⊜ 99(2)—$5,000 for suffering of deceased held not excessive.**

In an action for the death of a locomotive fireman, who regained consciousness a few minutes after a wreck and suffered 17 hours before he died, *held* that $5,000 for his pain and suffering was not excessive.

**5. Death ⊜ 99(4)—$25,000 to widow of locomotive fireman held not excessive.**

Where deceased was an experienced locomotive fireman 45 years old, earning about $220 a month, and in line for promotion to engineer, in which position he would have earned an average of $300 or more per month, *held* that $25,000 as compensation to his widow and children was not excessive.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by Mrs. Lola E. Shepler, temporary administatrix of the estate of J. E. Shepler, deceased, against John Barton Payne, Agent. From judgment for plaintiff, defendant appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Randell & Randell, of Sherman, and Vinson, Elkins & Wood, of Houston, for appellee.

HIGHTOWER, C. J. This was a suit by Mrs. Lola E. Shepler, temporary administratrix of the estate of J. E. Shepler, deceased, for the benefit of herself and the minor children of herself and said J. E. Shepler, against John Barton Payne, Federal Agent of Railroads, for damages on account of the death of said J. E. Shepler, the husband and father. Plaintiff alleged, substantially, that J. E. Shepler was a locomotive fireman on a passenger train engaged in interstate commerce on the St. Louis, Brownsville & Mexico Railroad, and that on October 29, 1919, the train was wrecked near the town of Marianna between Houston and Brownsville near or at a switch, and that J. E. Shepler sustained injuries which shortly after resulted in his death. It was alleged, substantially, that defendant was negligent in the following respects, and that such negligence proximately caused Shepler's death: (a) That the roadbed and track at the place of the wreck was defective and insecure and unsafe; (b) that the guard rail, where the switch connects with the main line, was defective, insecure, insufficient, and unsafe; (c) that the rate of speed at which the train was traveling at the time, in view of the insecure, unsafe, and defective condition of the track, and insecure, insufficient, and defective condition of the guard rail, was excessive and dangerous.

Defendant answered by general demurrer, general denial, plea of assumed risk, and specially pleaded that the wreck which resulted in and caused the death of Shepler was not because of any defective track or guard rail or the rate of speed at which the train was traveling, but that the sole proximate cause of the wreck and the consequent death of Shepler was a broken flange on the rear left tender wheel, and that this was a latent defect in the wheel that was not discovered, and could not have been discovered, by defendant by the use of ordinary care prior to the wreck, and that therefore defendant was not liable.

The case was tried with a jury, and was submitted upon the following special issues, with the following answers thereto:

"Special issue No. 1: Do you or not find that the track at or near the place, and at the time of derailment, was defective, unsafe, and insecure? You will answer 'Yes' or 'No.'" The answer was: "Yes."

"Special issue No. 2: If you have answered the foregoing issue Yes, you will then answer this question: Was such condition due to the negligence of the Director General, his servants or employés? You will answer 'Yes' or 'No.'" The answer was: "Yes."

"Special issue No. 3: If you have answered the foregoing issue in the affirmative, then state: Was such negligence a proximate cause of the injury and death of the deceased, J. E. Shepler? You will answer 'Yes' or 'No.'" The answer was: "Yes."

"Special issue No. 4: Do you find that at the time and under the circumstances under which the wreck occurred the train in question was being operated at a greater rate of speed than an ordinarily prudent person would have operated it? You will answer 'Yes' or 'No.'" The answer was: "Yes."

"Special issue No. 5: If you have answered the foregoing special issue in the affirmative, then state: Was such rate of speed at which said train was being operated at the time and place in question a proximate cause of the injury and subsequent death of J. E. Shepler? You will answer 'Yes' or 'No.'" The answer was: "Yes."

⊜ For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Special issue No. 6: Do you or not find that the guard rail in question at the time of the derailment was defective, unsafe, and insecure? You will answer 'Yes' or 'No.'" The answer was: "Yes."

"Special issue No. 7: If you have answered the preceding issue in the affirmative, and in that event only, then answer this special issue: Did such condition as you have found constitute negligence? Answer 'Yes' or 'No,' as you may find the fact to be." The answer was: "Yes."

"Special issue No. 8: If you have answered the preceding issue in the affirmative, then state: Was such negligence a proximate cause of the injury and subsequent death of J. E. Shepler? Answer 'Yes' or 'No.'" The answer was: "Yes."

"Special issue No. 9: Do you or not find that the broken flange on the tender wheel, about which evidence has been introduced, was a proximate cause of the injury to, and subsequent death of, the deceased? You will answer, 'It was,' or, 'It was not,' as you find the fact to be." The answer was: "It was not."

"Special issue No. 12: What sum of money would be a fair and adequate compensation to the deceased, J. E. Shepler, if he had lived, for the physical pain and mental anguish, if any, suffered by him as the result of his injury?" The jury answered: "$5,000.00."

"Special issue No. 13: What sum of money, if paid in hand at this time, will fairly and adequately compensate the surviving wife and children for the pecuniary loss of each of them, if any, which you believe from the evidence they have sustained by reason of the death of J. E. Shepler, based upon their reasonable expectation of pecuniary benefit, if any, from the continuance of his life had he lived." The jury answered: "$25,000.00."

Upon the verdict of the jury judgment was rendered in favor of plaintiff for $30,000, and after the motion for new trial had been presented and overruled, the defendant in due time prosecuted his appeal to the Court of Civil Appeals for the First Supreme Judicial District, and by order of the Supreme Court the cause was transferred to this court.

[1] Appellant's first contention is that the verdict of the jury upon the issues of negligence of the defendant as a proximate cause of the death of plaintiff's decedent is in all respects contrary to and not supported by the great weight and preponderance of the evidence. It is not contended that the jury's verdict, finding appellant guilty of negligence, is not supported by the evidence as to any of the grounds alleged, but the specific contention is that the jury's finding that said acts of negligence, singly or together, became the proximate cause of Shepler's death was without support in the evidence, it being contended by appellant that the overwhelming weight and preponderance of the evidence showed that the broken flange on the tender wheel was the sole proximate cause of the wreck and of Shepler's death. Appellant attempted to establish this contention by the evidence of the following named witnesses,

who testified as experts: J. W. Walters, appellant's assistant superintendent; J. La Valle, appellant's mechanical superintendent; J. W. Harris, appellant's roadmaster; J. C. Nolan, appellant's division superintendent; Fred J. Hawn, appellant's assistant division superintendent. Each of these witnesses was shown to be qualified to testify as an expert, and they were permitted to do so, and each testified that in his opinion the wreck was caused by reason of a broken flange on the rear left tender wheel, and not by reason of any defective condition in the track or roadbed, or by reason of any defective condition of the guard rail, or by reason of the speed of the train at the time. These conclusions on the part of said witnesses were arrived at by what they found upon the ground after the wreck, that is the location of the train's equipment, the position in which the wrecked portions of the train were found, the marks upon the ties and rails at the point, etc. Each of these witnesses went into great detail in stating the facts upon which his conclusion was based, but such facts and details are entirely too lengthy to be incorporated in this opinion, and we shall not undertake to mention them. The statement of facts is very voluminous, consisting of nearly 340 pages, and we have read the entire statement, and have reached the conclusion that the evidence as a whole, bearing upon the issue of the proximate cause of this wreck, warranted and fully sustains the verdict of the jury that the defective condition of the track and the defective condition of the guard rail and the rate of speed at which the train was traveling were each and all a proximate cause of the wreck and the consequent death of Shepler. We, therefore, overrule this contention.

It is next contended that the verdict, to the effect that the broken flange on the rear wheel of the tender was not a proximate cause of the wreck, is contrary to the great weight and preponderance of the evidence. We overrule this contention. But if it should be conceded that the broken flange on the wheel was a proximate cause, still it would not defeat a recovery by the plaintiff in this case. in view of the finding by the jury that appellant was guilty of negligence in other respects, which were also proximate causes of the wreck.

[2] The next contention is:

"The court should have granted a new trial. because of misconduct of counsel for plaintiff in interrupting counsel for defendant while arguing the case to the jury, and after making the interruptions in pointedly and repeatedly asserting that there was some arrangement between the federal government and the railway corporation whereby the government would be reimbursed should it have to pay out any money in satisfaction of the judgment in this case; all of which and the exception thereto more fully appears from the bill of exception No. 1."

The matter here complained of will be fully understood by quoting bill of exception No. 1, which was as follows:

"Be it remembered that upon the trial of the above styled and numbered cause, while counsel for defendant was arguing the case to the jury, he undertook to explain who the defendant was, and what his attitude towards the cause of action was, and in doing so stated that John Barton Payne was merely an agent of the federal government, assisting in the winding up of the affairs of the federal administration of railroads, and as such agent permitted to be sued by an act of Congress; that any judgment rendered would be paid out of the revenue provided by the government. This being in substance the statement of counsel for the defendant, he was thereupon interrupted by C. B. Randell, counsel for plaintiff, who addressed the court, and objected to the line of argument as made, and stated that he could not permit to pass unchallenged the statement made to the effect that any judgment rendered would be paid out of the funds provided by the government since (as said counsel undertook to state) it was a well-known fact that there were arrangements between the government and railroad corporations, whereby the government would be reimbursed for any moneys paid out in such cases, but that just what such arrangements were it was not material to inquire, and it should not be developed in argument or otherwise in this case. At this point, counsel for defendant interrupted plaintiff's counsel, in turn, excepting to the statement as made, to the effect that there was some arrangement between the government and the railroad corporations whereby the government would be reimbursed for any money paid out on any such judgment, and requesting the court to instruct the jury that any judgment rendered in this case would be paid by the federal government. The court did not, however, at this point give any such instruction, but overruled the objection of counsel for plaintiff to the line of argument of counsel for defendant, and instructed counsel for defendant to proceed with his argument. Thereupon counsel for defendant said, in substance, to the jury that he could not understand why counsel for plaintiff was so insistent upon suggesting to the jury that which was not a fact, namely, that any judgment rendered would have to be paid, ultimately, by the railroad corporation, unless counsel had in mind that the jury might possibly entertain some degree of prejudice against the railroad corporation and undertake to assess punishment in the case, when such prejudice or the contemplation of punishment would be entirely inappropriate and improper in any event, and furthermore, even if the jury or any member of the jury could otherwise entertain such suggestions, nevertheless, in view of the undoubted fact that the federal government was the real party at interest, from the standpoint of the defendant, such considerations ought not to obtain. At this point counsel for defendant was again interrupted with a reiteration by counsel for plaintiff that there was some arrangement between the government and the railroads for reimbursement, and in response to such statement counsel for defendant again requested the court to instruct the jury properly concerning this controverted point. Thereupon the court instructed the jury that the only defendant in the case was John Barton Payne, Federal Agent, and that the jury had no right to consider any matter not affecting said defendant. But the defendant reserved his exceptions to this procedure, nevertheless, and now tenders this as his bill of exceptions with the request that the same be examined, approved and ordered filed as a part of the record in this cause, which is accordingly so done."

As to this contention, it is our opinion that the matter complained of was not of such character as was calculated to prejudice appellant before the jury in any respect, although able counsel for appellant strenuously contend in the brief that the remarks made by plaintiff's counsel, which were, substantially, that there was some kind of arrangement by which the federal government would be reimbursed by the railroads for any judgment that might be rendered against appellant in the case, were highly calculated to cause the jury to render a verdict against appellant, even after the trial court had instructed the jury that the only defendant in the case was John Barton Payne, Federal Agent, and that the remarks of counsel as to who the real defendant was in the case should not be considered by them in arriving at a verdict. But, if it should be conceded that the interruptions and remarks made by plaintiff's attorney, as shown by the bill, were calculated to prejudice the jury in any way in the case, still we think that it should be held that counsel for defendant provoked such interruptions and remarks by plaintiff's attorney, and that therefore appellant cannot complain of this matter. As we see it, there was no reason why counsel for appellant should explain to the jury in this case that the federal government would have to pay any judgment that would be rendered against the appellant in this case, because if such was a fact it was entirely immaterial to any part of plaintiff's cause of action, and, there being no reason why defendant's counsel should make such explanation to the jury outside of the record we see no reason why the remarks of plaintiff's attorney in reply thereto should cause a reversal of this judgment. The contention is overruled.

[3] It is next contended that the judgment should be reversed because of improper argument and remarks on the part of plaintiff's attorney, C. B. Randell, while making the closing argument to the jury. This contention will be fully explained by appellant's bill of exception No. 2, reading as follows:

"Be it remembered that upon the trial of the above styled and numbered cause while counsel for plaintiff, C. B. Randell, was closing the argument before the jury, he undertook to discuss the evidence relating to the allegations in plaintiff's petition and to the issue submitted about the defective track, as a proximate cause of the derailment. After calling attention to the witnesses produced by plain-

tiff on the subject, and commenting on their evidence somewhat, counsel then undertook to discuss the failure of the defendant to place upon the stand other witnesses than those actually used, and said in substance:

. " 'The defendant has brought a large number of witnesses here. You gentlemen saw them—there was a whole room full of them. And you heard defendant's counsel say that he wanted this jury to have a full and fair view of all the facts surrounding this deplorable wreck, and that he had endeavored to lay bare all of the facts, but do you think his actions consistent with such expression of frankness and fairness when out of that big number of men he placed on the stand only members of the official railroad family, all of whom attempt to cram down your throats that pretty concocted story of theirs about that broken flange starting the wreck, and that nothing else but this broken flange could have started the wreck or could have finished it. The defendant did not put on the little fellows—the men who actually saw that track laid and who actually put down the ties at that point and spiked the rails and who know the truth about that old piece of guard rail, and who can tell you whether or not there were high or low places or low centers around there. No; they keep these little fellows off the stand, and when they do it they keep from you facts that you as the jury in this case ought to have before you, but which facts defendant does not want you to have; for the lips of these fellows, all employés of the defendant, are locked to this widow and her minor children. It is true, gentlemen, their lips are locked to us, and the defendant has the key, and we have no way of getting at the facts that we think you are entitled to. You heard Mr. Hostrasser say that he had refused to give us a statement. Gentlemen, I cannot understand such an attitude. There is some hidden influence, some wicked influence behind this whole matter that I cannot penetrate. I do not mean to say that all of these witnesses have been bought, but I do say that there is an influence at work that keeps locked the lips of these men and prevents them from telling the facts, and whatever influence causes men to deliberately shut their lips to the truth is a wicked influence, and amounts to slavery. It is a suppression of testimony that ought not to be tolerated.' "

There was nothing in this record, so far as we have been able to ascertain, that justified the remarks of plaintiff's attorney, Mr. Randell, to the effect that the defendant had been guilty of unfair conduct in respect to the failure to place upon the stand any witness in the cause, or that there had been any wicked or improper influence exercised by defendant over any of such witnesses, which caused them to testify falsely in the case, or that defendant suppressed any evidence on the part of any witness in the case, and the remarks of plaintiff's counsel, Mr. Randell, to that effect were highly improper, as the trial court stated at the time they were, and it is to be regretted that any attorney would so far breach the rules of argument as to make such remarks to a jury as were made

by Mr. Randell, as shown by this bill. They cannot be excused or extenuated upon the ground that Mr. Randell was a beginner at the bar, because it is well known that he is an attorney of large experience and profound ability, all of which is reflected by the reported cases in this state. And the bill, in this connection shows nothing that could have provoked Mr. Randell to make such improper remarks to the jury, and such conduct on his part cannot be too highly censured by the courts, and were it not for the fact, as shown by the bill, that the trial judge promptly sustained objections to such improper remarks, and pointedly instructed the jury to disregard them, telling the jury that they were improper and were without basis in the evidence, we would not hesitate to reverse this judgment.

Appellant relies for reversal in this connection upon the following authorities: Ft. Worth Belt Railway Co. v. Johnson, 59 Tex. Civ. App. 105, 125 S. W. 388; Galveston Electric Co. v. Dobbert (Tex. Civ. App.) 127 S. W. 838; American Express Co. v. Parcarello (Tex. Civ. App.) 162 S. W. 926; Railway Co. v. Musick, 33 Tex. Civ. App. 177, 76 S. W. 221; Railway Co. v. Jones (Tex. Civ. App.) 81 S. W. 60; Railway Co. v. Terrell (Tex. Civ. App.) 172 S. W. 742; Railway Co. v. Washington, 42 Tex. Civ. App. 380, 92 S. W. 1054. Upon examination of the above-mentioned cases, it will be found that in nearly all of them the trial court declined to sustain objections made to the improper argument, and declined to instruct the jury to disregard such argument. In some of them, however, the court held that the argument was of such inflammatory nature and so highly calculated to prejudice the appellant, in view of the unsatisfactory evidence as to liability, etc., that the judgment should be reversed, notwithstanding the trial court's action in instructing the jury to disregard the improper argument.

Appellant also calls our attention to the case of Kirby Lumber Co. v. Youngblood (Tex. Civ. App.) 192 S. W. 1106, the opinion in which was written by Associate Justice Davis of this court. In that case, we reversed the judgment of the trial court because of improper argument on the part of appellee's attorney, and it is clear from the opinion in that case that this court recognized and gave effect to the rule in this state that improper argument on the part of an attorney to a jury may be of such a nature and character and so highly calculated to inflame the minds of the jury and prejudice the complaining party's cause that the appellate court will reverse the judgment, notwithstanding the trial court might instruct the jury to disregard such improper argument. It will be found, upon examination of authorities announcing that rule, that a reversal under such circumstances should only take place where the evidence as to liability was

so unsatisfactory as to lead to the conclusion that the jury must have been actuated by the improper argument, notwithstanding the trial court's instructions to disregard it. Such was the case of Kirby Lumber Co. v. Youngblood. This court felt that, in that case, the evidence as to the liability of appellant was so unsatisfactory that it ought to be presumed that the improper argument on the part of appellee's counsel prejudiced the rights of appellant in that case. From some of the authorities it will be seen, also, that judgments have been reversed on account of highly improper argument on the part of appellee's counsel before the jury, where it was claimed that where the appellate court concluded that the amount of the verdict was manifestly greatly excessive. And in some of the cases of that character, the trial court had instructed the jury to disregard the improper argument. But in this case, while the argument of Mr. Randell was highly improper and unbecoming a lawyer of his ability and standing, yet, in view of the fact that the trial judge promptly sustained the objections to his argument, and told the jury that it was improper and based upon nothing in the record, and instructed the jury to wholly disregard it, and in the view of the further fact that in our opinion the liability of the appellant in this case was established by satisfactory evidence, we are of the opinion that the judgment should not be reversed because of the improper argument and overrule the contention. Jones v. Wright (Tex. Civ. App.) 92 S. W. 1010; Bonner v. Glenn, 79 Tex. 531, 15 S. W. 572; Hogan v. Railway Co., 88 Tex. 679, 32 S. W. 1038; Railway Co. v. Aleman, 52 Tex. Civ. App. 565, 115 S. W. 73; Galveston, etc., v. State (Tex. Civ. App.) 194 S. W. 462; Freeman v. McElroy (Tex. Civ. App.) 126 S. W. 657; Galveston, H. & S. A. R. Co. v. Hill (Tex. Civ. App.) 202 S. W. 358; El Paso Co. v. Terrazas (Tex. Civ. App.) 208 S. W. 387; Vaello v. Rodriquez (Tex. Civ. App.) 218 S. W. 1084; Sullivan v. Masterson (Tex. Civ. App.) 201 S. W. 194; Telegraph Co. v. Kelly (Tex. Civ. App.) 200 S. W. 225.

[4] It is next contended that the verdict of the jury in the amount of damages in respect to pain and suffering of plaintiff's decedent is grossly excessive, and contrary to the manifest great weight and preponderance of the evidence, and indicates either bias or some other improper motive.

It is next contended that the verdict in favor of plaintiff for $25,000, as compensation by reason of the loss of the husband and father was greatly excessive and was the result of bias or some other improper motive.

The evidence touching these contentions is without dispute. The wreck occurred about 7:15 or 7:20 a. m. on October 29, 1919. The record in this case, accompanied by a blueprint, shows that it was a most terrific wreck, the engine, cab, tender, mail car, baggage-car, and perhaps other coaches all being derailed and thrown and hurled in different directions and positions. The track at places was completely torn up, and the rails and ties scattered. The deceased, when picked up a few minutes after the wreck, was in an inclining position, not sitting up straight nor lying down. Upon examination it was found that both legs were crushed, one of them perhaps all the way to his body, and his right foot was mashed almost completely off at the ankle, but hung on by a mere piece of skin. His left arm was terribly mashed, and the meat ground almost to sausage, but the bone was intact. There were other bruises and lacerations upon the body. In a few moments after the shock was over, however, Shepler regained consciousness, and the undisputed proof shows that he suffered great physical pain from then on until his death. It also shows that he grieved terribly about his family, begging the doctor to prolong his life until he could see his family. He died the following night about midnight, having suffered mentally and physically since 7:15 a. m. the day before. The evidence discloses that he was very fond of his family, and that it grieved him very much to know that he was soon to die, and that they would be deprived of his support and protection. Why counsel contend that the item of $5,000 for his pain and suffering was excessive we cannot understand, and no reason is suggested by counsel for the contention, and no authority is cited in its support. The contention is overruled.

[5] As to appellant's contention that $25,000 as compensation to the widow and children was excessive, after a careful consideration of the evidence we have concluded that it cannot be sustained. At the time of his death, J. E. Shepler was 45 years and 9 months of age. He was an experienced locomotive fireman, and at that time was earning a salary on an average of $220 or $224 a month, and the undisputed proof is that he was in line for promotion in the near future; in fact, Mrs. Shepler testified that he was expected to be called upon to be examined for promotion to the position of engineer at any time. In the position of engineer on that line, he would have earned, according to the undisputed proof, on an average of $300 or more per month. His widow, Mrs. Lola E. Shepler, was 42 years of age, and at the time of his death there were five minor children, the oldest being 19 years of age and the youngest 4 years of age. Two months after Shepler's death, another child was born, making six children in all. The undisputed proof shows that Shepler was an industrious and energetic man; that he was well qualified to assume the duties of railroad engineer at the time of his death, and that he was a very affectionate father and husband, and was very ambitious for the proper rearing and education of his children. We have no

hesitancy in concluding that the verdict of $25,000 in favor of this family was not excessive, and such contention is overruled. Lancaster v. Morgan (Tex. Civ. App.) 227 S. W. 524; Galveston, etc., v. Salisbury (Tex. Civ. App.) 143 S. W. 252; Lancaster v. Allen (Tex. Civ. App.) 207 S. W. 984; Texas Power & Light Co. v. Bristow (Tex. Civ. App.) 213 S. W. 702; San Antonio, etc., v. Williams (Tex. Civ. App.) 158 S. W. 1171; Railway Co. v. Cunningham (Tex. Civ. App.) 168 S. W. 428; Hines v. Mills (Tex. Civ. App.) 218 S. W. 777; Railway Co. v. Harrington, 241 S. W. 250 (recent opinion by this court and not yet [officially] reported).

This disposes of all contentions made by appellant, and, finding no reversible error in the judgment, it has been ordered that the same be affirmed.